**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4218**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

PERRY REESE, III,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at New Bern. Louise W. Flanagan,
Chief District Judge. (7:08-cr-00034-FL-1)

Submitted:  June 23, 2011          Decided:  August 2, 2011

Before WYNN and DIAZ, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Jeffrey M. Brandt, ROBINSON & BRANDT, P.S.C, Covington,
Kentucky, for Appellant. George E. B. Holding, United States
Attorney, Jennifer P. May-Parker, David A. Bragdon, Assistant
United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a five-day jury trial, Perry Reese, III, was convicted on two counts of dispensing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and one count of conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). The district court sentenced Reese to 240 months' imprisonment.

Reese challenges his convictions and sentence on several grounds. First, he appeals the district court's denial of his motion for a judgment of acquittal. Alternatively, Reese argues that the racketeering conviction should be vacated because the district court erred in instructing the jury. With respect to the 240-month sentence imposed by the district court, Reese argues first that the district court erred in calculating the drug weight used in determining his Sentencing Guidelines range and second that the sentence was procedurally and substantively unreasonable. For the following reasons, we affirm.

I.

A.

Reese first argues that the district court erred in denying his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, contending that the

2

government's evidence was insufficient to prove that he unlawfully dispensed controlled substances. We review a district court's denial of a Rule 29 motion for judgment of acquittal de novo, United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005), and are required to sustain the jury's verdict if, viewing the evidence in the light most favorable to the government, "a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt," United States v. Singh, 518 F.3d 236, 246 (4th Cir. 2008). In reviewing a sufficiency claim, we "must consider circumstantial as well as direct evidence, allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established," United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982), and "may not weigh the evidence or review the credibility of the witnesses . . . those functions are reserved for the jury," United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

Title 21 U.S.C. § 841 provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." However, medical doctors registered by the Attorney General "are authorized to write prescriptions for or to otherwise dispense controlled substances, so long as they comply with the

3

requirements of their registration." United States v. Hurwitz, 459 F.3d 463, 475 (4th Cir. 2006) (citing 21 U.S.C. § 822(b)). Regulations promulgated by the Attorney General provide "that a prescription for a controlled substance is effective only if it is 'issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.' " Id. (citing 21 C.F.R. § 1306.04(a)).

Thus, to convict Reese of the two 21 U.S.C. § 841 charges, the government was required to prove that (1) he "distributed or dispensed a controlled substance," (2) "he acted knowingly and intentionally," and (3) his "actions were not for legitimate medical purposes in the usual course of his professional medical practice or [were] beyond the bounds of medical practice." United States v. Singh, 54 F.3d 1182, 1187 (1995) (quoting United States v. Tran Trong Cuong, 18 F.3d 1132, 1141 (4th Cir. 1994)).

As to the third element of the offense, Reese contends that the government was required to prove that he distributed controlled substances outside the usual course of his professional practice and not for a legitimate medical purpose. Reese argues that, at most, the government's evidence was sufficient to prove the former but not the latter.

We do not read the relevant statute and regulations as requiring the proof urged by Reese. See, e.g., United States v.

4

Hitzig, 63 F. App'x 83, 87 (4th Cir. 2003) ("We reject [the defendant's] contention that the district court erred because it did not instruct the jury that the government was required to prove that he both dispensed the controlled substances not for a legitimate medical purpose in the usual course of professional medical practice <u>and</u> in a manner that is beyond the bounds of professional medical practice."). Rather, "[o]ur precedent makes it clear that the standard for criminal liability is that the physician's conduct in dispensing a controlled substance falls outside the boundaries of the [physician's] professional practice. While the government may meet its burden of proving guilt by showing that a physician dispensed a controlled substance for an illegitimate purpose, the government is not required to make such a showing." <u>Id.</u> (internal citation and quotation omitted). Accord <u>Singh</u>, 54 F.3d at 1187 ("[T]he evidence must show that the defendant's actions were not for legitimate medical purposes in the usual course of his professional practice <u>or</u> [were] beyond the bounds of medical practice.") (emphasis added; internal quotation omitted); <u>Tran Trong Cuong</u>, 18 F.3d at 1138 ("The standard used by the [district] court 'without a legitimate medical purpose' does appear to be more strict than that required by <u>Moore</u> [423 U.S. 122 (1975)] and therefore was to defendant's benefit."). <u>But see</u> <u>United States v. Rosenberg</u>, 585 F.3d 355, 357 (7th Cir.

5

2009) ("[I]n order for a prescription to be unlawful it must not have a legitimate purpose and must be dispensed outside the usual course of medical practice."); United States v. Rosen, 582 F.2d 1032, 1033 (5th Cir. 1978) (holding that to convict a doctor under 21 U.S.C. § 841 the government must prove that he acted "other than for a legitimate medical purpose and in the usual course of his professional practice"). In any event, the district court instructed the jury on the heightened standard proposed by Reese and the government's evidence at trial was more than sufficient to support the jury's verdict.

With respect to Count I of the indictment, the government's evidence showed that Christy Brewington, a special agent with the North Carolina State Bureau of Investigation ("SBI"), made three undercover visits to Reese's office while posing as a patient, after the SBI had been tipped off that Reese was selling prescriptions and controlled substances directly to patients. Reese failed to perform any basic diagnostic questioning or examination of Agent Brewington over the course of her three visits, but rather simply complied with Brewington's request for pain medication (prescribing her OxyContin during her first and third visits, and Percocet during her second visit), instructed her on the "rules" in case Brewington was questioned about the prescriptions, and collected payment. The government's evidence also showed that, following

6

each visit, Reese falsified Brewington's patient examination forms to reflect medical tests that were never conducted and discussion of pain and medications that never occurred.

As to Count II, involving Reese's conduct with respect to Elizabeth Sanders, the government's evidence showed that Reese conducted a limited physical examination of Sanders during her first office visit, and thereafter abandoned any diagnostic testing while increasing her prescriptions to about 20 pills of Percocet per day. The evidence also showed that Sanders paid Reese cash for prescriptions and gave him rings, watches, a generator, and other items that Reese told her he wanted from the pawnshop where she worked, that Sanders met Reese at various locations to purchase the prescriptions, which involved payment of Sanders's insurance co-pay as well as additional cash fees, and that Reese concealed some of the prescriptions he wrote to Sanders by writing them in the names of her family members, including Sanders's teenage daughter.

Beyond these specific instances, the government's evidence also showed that Reese conducted limited or no physical examinations of other patients and sold them prescriptions--and in some cases sold them drugs directly. Reese also wrote prescriptions in the names of his patients' family members to avoid triggering the suspicion of the authorities. One patient testified that Reese told him to chew OxyContin pills for

7

quicker effect. Moreover, Dr. Mark Romanoff, a pain management specialist, opined that Reese's actions in (1) failing to conduct proper examinations, diagnosis, and follow-up, (2) issuing patients prescriptions in others' names, (3) re-dispensing pills that patients had returned to him, (4) selling pills directly to patients without a dispensing license, (5) charging for a prescription without seeing the patient, (6) routinely prescribing medications outside of the office setting, (7) prescribing patients up to 20 pills per day, and (8) recommending that one of his patients chew OxyContin, were all inappropriate behaviors and beyond the bounds of professional medical practice.

Viewing this evidence, as we must, in the light most favorable to the government, we conclude that a rational trier of fact would have little trouble finding that Reese's actions were outside the scope of medical practice and, even though the government was not required to so prove, not for any legitimate medical purpose. Accordingly, the district court did not err in denying Reese's motion for judgment of acquittal.

B.

Reese next argues that the district court erred when it declined to instruct the jury that, for purposes of Count III alleging a violation of the Racketeer Influenced and Corrupt

8

Organizations Act ("RICO"), the enterprise alleged by the government to have been engaged in criminal activity must have an existence separate from Reese. The enterprise alleged in this case was Roseboro Urgent Care, P.A., out of which Reese ran his medical practice and of which Reese was the sole proprietor and the only physician. We review a "district court's decision to give or refuse to give a jury instruction for abuse of discretion." United States v. Passaro, 577 F.3d 207, 221 (4th Cir. 2009) (citing United States v. Moye, 454 F.3d 390, 397-98 (4th Cir. 2006)). "We review a jury instruction to determine whether, taken as a whole, the instruction fairly states the controlling law." Moye, 454 F.3d at 398 (internal quotation omitted). An error in a jury instruction will warrant reversal "only when the error is prejudicial based on a review of the record as a whole." United States v. Ellis, 121 F.3d 908, 923 (4th Cir. 1997).

Reese contends that the district court abused its discretion when it eliminated the following sentence from the proposed RICO instruction: "The enterprise must have some separate existence from the defendant, that is, the defendant cannot be both the RICO defendant and the RICO enterprise." Reese argues that the government must prove that "[t]he enterprise must be distinct from the persons alleged to have violated § 1962(c)." Palmetto State Medical Ctr. v. Operation

9

<u>Lifeline</u>, 117 F.3d 142, 148 (4th Cir. 1997). The government does not contest this point, but argues that a distinction between the enterprise and the defendant is established where the enterprise is a legal entity and the defendant is a person.

Viewing the RICO instruction as a whole, we conclude that the district court correctly instructed the jury that the government must prove the existence of an enterprise, including any legal entity such as a partnership, corporation, or association, that the enterprise was engaged in interstate commerce, and that the defendant was associated with or employed by the enterprise. Thus, the district court fairly stated the controlling law and did not err by omitting the proposed statement from the instruction.

### C.

Reese next challenges his sentence, arguing that the district court improperly calculated the quantity of drugs attributable to his conduct by failing to exclude prescriptions written in good faith. We review the district court's factual findings as to the application of the Guidelines for clear error. <u>United States v. Daughtrey</u>, 874 F.2d 213, 217 (4th Cir. 1989). Finding no clear error with respect to either point Reese presses on appeal--that the district court's estimate as to the drug quantity attributable to Reese was not conservative

10

enough and that the district court should have excluded the quantity of drugs that Reese argues were prescribed for legitimate medical purposes--we affirm the district court's calculations.

Finally, Reese argues that his sentence was both procedurally and substantively unreasonable. We review sentences "under a deferential abuse of discretion standard." United States v. Grubbs, 585 F.3d 793, 803 (4th Cir. 2009). First, we review a sentence to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, [or] failing to consider the § 3553(a) factors." Gall v. United States, 552 U.S. 38, 51 (2007). Next, we review for substantive reasonableness, "examin[ing] the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010).

Reese's presentence report suggested a base offense level of 32 on the ground that Reese distributed controlled substances with a total marijuana equivalency exceeding 1000 kilograms. With six levels of enhancements, two each for abusing a position of public or private trust, using a minor to

11

commit the offense, and obstructing justice, the total offense level was 38.[1] Because Reese had no prior criminal history, his Guidelines sentence range was 235 to 293 months' imprisonment. Reese pressed for a downward departure from the Guidelines sentence, based on mitigating circumstances that he argued were not adequately considered by the Guidelines. The district court rejected this argument and sentenced Reese to 240 months' imprisonment, the effective Guidelines sentence based on the statutory maximum for the two § 841(a)(1) counts.

Reese argues that the district court erred procedurally by declining "to consider grounds founded in the age of the defendant, his family connections and ties, his military service, his lack of a criminal history, or his public service, or other reasons offered." J.A. 819. We disagree.

The district court declined to consider these factors when assessing Reese's argument for a downward departure from the Guidelines sentence. As Reese conceded during sentencing, the Guidelines specifically discourage a downward departure on the basis of these factors except in extraordinary

---

[1]Reese's presentence report originally calculated a total offense level of 42, having included an additional four points on the basis that Reese was an organizer or leader of a criminal activity involving five or more participants. However, the government agreed that this adjustment was inappropriate and the district court subtracted the four points, resulting in a total offense level of 38.

circumstances. The court, did, however, analyze the § 3553(a) factors--including Reese's military service, family history, education, health, and service to community--before determining that a 240-month sentence was sufficient and no greater than necessary to accomplish the purpose of sentencing. Accordingly, we find no procedural error in the district court's sentencing calculus.

Reese next argues that his sentence was substantively unreasonable in light of all the § 3553(a) factors. Specifically, Reese contends that the district court's sentence is too severe and far in excess of that imposed on others for similar offenses. According to Reese, physicians previously convicted of similar offenses have received drastically shorter sentences--in the range of seven to 78 months--and that it is "all but unheard of that a physician would be ordered to serve 20 years or more." Appellant's Br. 39.

First, we reject Reese's argument that the cases he cites provide a meaningful guidepost for assessing the substantive reasonableness of his sentence. As the government notes, the sentences that Reese points to as comparable are in fact easily distinguishable based on, among other things, the offenses charged, the schedule of the drug at issue, the drug quantity, the applicability of certain departures or enhancements, and the specific offender and offense

13

characteristics that may have motivated the district court to vary from an advisory sentencing range. Moreover, in enacting the Sentencing Guidelines, "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." U.S.S.G. Ch. 1 Pt. A § 3. We are satisfied with the district court's determination that Reese's sentence was proportional to the severity of his charged conduct. Finally, we are to presume that the district's court's chosen sentence is substantively reasonable where, as here, it is within a correctly calculated Guidelines range. Mendoza-Mendoza, 597 F.3d at 217. After careful review, we find no cause to upset that presumption and therefore affirm the district court's sentence.

II.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

14